IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA       :       CRIMINAL ACTION
                               :       No. 12-112-01
     v.                        :
                               :
PATRICIA MCGILL                :


M E M O R A N D U M

EDUARDO C. ROBRENO, J.                    September 11, 2015


        Before the Court is Defendant McGill's motion to plead

nolo contendere or make an <u>Alford</u> plea as to Count One of the

indictment charging conspiracy to commit healthcare fraud

pursuant to 18 U.S.C. § 1349. For the reasons that follow, the

Court will reject the proffer of such plea.


I.    **BACKGROUND**

        On March 21, 2012, Defendant Patricia McGill was

charged by indictment with conspiring to commit healthcare fraud

under 18 U.S.C. § 1349 (Count One) and substantive counts of

healthcare fraud in violation of 18 U.S.C. § 1347 (Counts Two

through Fourteen) in connection with her role at a Philadelphia

hospice provider, Health Care Hospice, Inc. ("HCH"). ECF No. 1.

Fifteen other defendants charged with various levels of

involvement in the same healthcare fraud scheme previously

entered guilty pleas or have been convicted at trial.[1] Defendant
McGill is one of the few remaining defendants.[2]

Trial of this matter was previously scheduled to begin
on September 1, 2015. However, immediately prior to the start of
jury selection, Defendant's counsel made an oral motion for the
Court to accept a nolo contendere plea or Alford plea. See
Scheduling Order (ECF No. 323). Specifically, defense counsel
explained that Defendant McGill was willing to admit that she
aided and abetted the commission of the healthcare fraud charges
set forth in Counts Two through Fourteen of the indictment, but

---

[1] The evidence established that participants in the
scheme included: Matthew Kolodesh; Eugene Goldman; Alex Pugman,
who served as director of HCH; Svetlana Ganetsky, Pugman's
spouse and the development executive for HCH; Cecelia Wiley, who
worked as the office manager of HCH; Richard Barber, Edward
Hearn, Eugenia Roytenberg, Diana Koltman, Luda Novikov, Irina
Chudnovsky, Michelle Segal, Natalya Shvets, Giorgi Oqroshidze,
Alex Koptyakov, Eugenia Gottman, Angela Bagdasarova, and Anna
Yakhnis, who worked as nurses at HCH; and T.J. Wiley. Kolodesh,
Goldman, and Shvets were convicted at trial of healthcare fraud
charges. Pugman, Ganetsky, Cecelia Wiley, Hearn, Roytenberg,
Koltman, Novikov, Oqroshidze, Koptyakov, Gottman, Bagdasarova,
and Yakhnis have pleaded guilty to healthcare charges based upon
their roles in the scheme. See Gov't's Resp. Ex. 1, E. Edward
Conway Aff. ¶ 11 (ECF No. 327). At the hearing on the instant
motion, the Government explained that there are several
additional defendants involved in this scheme who are awaiting
disposition of their cases.

[2] The delay in Defendant McGill's trial was due, in
large part, to the fact that she challenged her competency to
stand trial, and the Court continued the trial on several
occasions to allow for medical evaluations of Defendant, an
evidentiary hearing, and briefing on the issue. Ultimately,
Defendant McGill was found competent to stand trial.

she refused to admit that she conspired to commit healthcare
fraud as charged in Count One. Based on this turn of events,
this Court continued the trial until September 9, 2015, and
ordered the parties to submit written briefs as to whether the
Court should accept a nolo contendere plea or <u>Alford</u> plea under
the circumstances of this case. <u>See</u> Scheduling Order (ECF No.
323). Both Defendant McGill and the Government have submitted
such briefs, and a hearing on this motion was held on September
9, 2015.

If this case proceeds to trial, the Government
contends it would prove the following facts:[3]

HCH, a for-profit hospice provider, was incorporated
in 1999 under the laws of the Commonwealth of Pennsylvania. HCH
was in the business of providing hospice services for patients
at nursing homes, hospitals, and private residences. HCH
received Medicare, Medicaid, and private insurance reimbursement
for providing home care and in-facility care to purportedly
terminally ill patients with life expectancy prognoses of six
months or less.

Defendant McGill, a registered nurse, was employed at

---

[3]     All facts are taken from the Government's Trial
Memorandum (ECF No. 275), which Defendant acknowledges are
sufficient to support a conviction of conspiracy to commit
healthcare fraud.

HCH and served as the Director of Nursing and Clinical Services commencing in or about 2005. In that capacity, she was responsible for the planning, implementation, and evaluation of HCH's hospice services in accordance with local, state, and federal regulations. Defendant McGill also supervised clinical nursing staff, which included reviewing staff documentation and patient charts to assure quality and appropriateness for hospice service and maintaining records of patient visits. Defendant McGill was supervised by the Director and owner of HCH, Alex Pugman,[4] who conceived and orchestrated a plan to defraud Medicare of approximately $16 million dollars from about January 2005 through December 2008. The scheme involved falsification of nursing notes and home health aide documentation and other records, which were reviewed by Defendant McGill.

With the above-mentioned indictment, Defendant McGill was charged with knowingly authorizing the admission and maintenance of ineligible patients for hospice services, resulting in fraudulent healthcare insurance claims submitted by HCH totaling approximately $9,328,000, and authorizing HCH staff

---

[4]     Alex Pugman, also known as Aleksandr Pugachevsky, pleaded guilty to conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349. Under the terms of his plea agreement, Pugman was required to testify as a witness for the Government. Pugman testified in the trial of Matthew Kolodesh, Crim. No. 11-0464, and Nalaya Shvets, Crim. No. 12-112-02, Defendant McGill's co-defendants. The Government plans to call Pugman as a witness in Defendant McGill's trial as well.

to falsely document more costly levels of hospice services resulting in fraudulent claims totaling approximately $325,000. ECF No. 1.

## II.   LEGAL STANDARD

### A. Nolo Contendere Pleas

#### 1.   Federal Rule of Criminal Procedure 11 and Nolo Contendere Pleas Generally

Under Federal Rule of Criminal Procedure 11, a defendant may plead not guilty, guilty, or nolo contendere. Fed. R. Crim. P. 11(a)(1). A plea of nolo contendere, however, requires consent of the court. Id. Before accepting a plea of nolo contendere, Rule 11 instructs that "the court must consider the parties' views and the public interest in the effective administration of justice." Fed. R. Crim. P. 11(a)(3). "[T]he reason for considering these factors is that nolo pleas come with various costs and benefits, and the court must ensure that in the case before it the benefits outweigh the costs." United States v. Mancinas-Flores, 588 F.3d 677, 682 (9th Cir. 2009). Rule 11 is silent with respect to what, if anything, the court must consider before rejecting a nolo plea.

While the Third Circuit has not ruled on this issue, other courts of appeals have held that a district court has broad discretion in determining whether to accept a nolo plea

and may reject the plea if it determines that accepting the nolo plea is not in the public interest. See, e.g., Mancinas-Flores, 588 F.3d at 682; United States v. Buonocore, 416 F.3d 1124, 1131 (10th Cir. 2005) ("One of the most important characteristics of the plea of nolo contendere . . . is that its acceptance by the court is not a matter of right of the defendant but is entirely within the discretion of the court." (internal quotation marks omitted)); United States v. David E. Thompson, Inc., 621 F.2d 1147, 1150 (1st Cir. 1980) ("Acceptance of a nolo plea is solely a matter of grace." (internal quotation marks omitted)); United States v. Soltow, 444 F.2d 59, 60 (10th Cir. 1971) ("[T]he acceptance of [a nolo] plea is a matter solely within the discretion of the court."). This is consistent with the Notes of the Advisory Committee from the 1974 amendments to Federal Rule of Criminal Procedure 11, which provide that "the balancing of the interests is left to the trial judge," so long as the judge "take[s] into account the larger public interest in the effective administration of justice." Fed. R. Crim. P. 11, Advisory Comm. Note to 1974 Amend. The Advisory Committee recognized that "[t]he defendant who asserts his innocence while pleading guilty or nolo contendere is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the

trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions." <u>Id.</u>

  Accordingly, the drafters of Rule 11 "intended to make clear that a judge may reject a plea of nolo contendere and require the defendant either to plead not guilty or to plead guilty under circumstances in which the judge is able to determine that the defendant is in fact guilty of the crime to which he is pleading guilty." <u>Id.</u>

2. <u>Effect of Nolo Contendere Pleas</u>

  For purposes of punishment, a plea of nolo contendere is the same as a guilty plea. Fed. R. Crim. P. 11, Advisory Comm. Note to 1974 Amend. The nolo contendere plea is technically an admission as to every essential element of the indictment. <u>United States v. Bessemer & Lake Erie R.R. Co.</u>, 717 F.2d 593, 597 (D.C. Cir. 1983). Although its literal meaning is "I do not contest it," a nolo plea is "tantamount to 'an admission of guilt,'" such that all that remains for the court to do after accepting the plea is enter judgment and pass sentence. <u>Lott v. United States</u>, 367 U.S. 421, 426 (1960) (quoting <u>Hudson v. United States</u>, 272 U.S. 451, 455 (1926)). Unlike a guilty plea, however, a nolo plea cannot be used against a defendant as an admission in a subsequent criminal or

7

civil case. See Fed. R. Evid. 410(a)(2); Fed. R. Crim. P. 11, Advisory Comm. Note to 1974 Amend.

By entering a nolo plea, a defendant waives any procedural rights that have a "direct connection to the determination of [the] defendant's guilt or innocence." United States v. DeCosta, 435 F.2d 630, 632 (1st Cir. 1970). An appellate court, however, may still review it for jurisdictional defects and challenges to the sufficiency of the indictment. Bessemer, 717 F.2d at 597-98; United States v. Am. Serv. Corp., 580 F.2d 823, 825 (5th Cir. 1978).

With respect to sentencing, while a reduction for acceptance of responsibility under a nolo contendere is not automatically barred by the nature of the plea, such a plea may be, as a general proposition, inconsistent with the acceptance of responsibility and is a relevant factor to consider when determining the sentence. United States v. Gordon, 979 F. Supp. 337, 342 (E.D. Pa. 1997). Several cases outside this Circuit have come to this general conclusion. See, e.g., United States v. Haversat, 22 F.3d 790, 799 (8th Cir. 1994) (holding that defendant's plea of nolo contendere, while continuing to minimize his role in price fixing conspiracy, was not acceptance of responsibility needed to justify a reduction in offense level); United States v. Boyle, 10 F.3d 485, 490 (7th Cir. 1993) (affirming district court's refusal to reduce defendant's

8

offense level under the sentencing guidelines for acceptance of responsibility after a nolo contendere plea because defendant had not demonstrated any responsibility for his criminal conduct).

### 3.    Standard for Consideration of Nolo Contendere Pleas

Throughout the federal district courts, "factors considered relevant by particular courts in determining whether to permit the plea of nolo contendere vary." Fed. R. Crim. P. 11, Advisory Comm. Note to 1974 Amend. This Court has no general policy as to whether to accept or reject nolo contendere pleas, instead exercising discretion depending on the circumstances.

Courts in this Circuit have identified a number of factors that may be helpful in deciding whether to accept a plea of nolo contendere. United States v. B. Manischewitz Co., No. 90-119, 1990 WL 86441, at *2 (D.N.J. May 23, 1990); United States v. H & M, Inc., 565 F. Supp. 1 (M.D. Pa. 1982); United States v. Rockwell Int'l Corp., No. 78-325, 1978 WL 1456 (E.D. Pa. Dec. 21, 1978). Those factors include:

1. The interests of private litigants in contemporaneous litigation;

2. The position of the Government;

3. The nature of the violations;

4. The duration of the violations;

5. The size and power of the defendant;

6. Prior violations by the defendant;

7. The impact of the conduct on the economy; and

8. The deterrent effect of the plea (i.e., whether a
   greater deterrent effect will result from
   conviction rather than from acceptance of the
   plea).

See B. Manischewitz Co., 1990 WL 86441, at *2-3; H & M, Inc.,
565 F. Supp. at 1; Rockwell Int'l Corp., 1978 WL 1456, at *1-2.
Some courts also consider the interests of judicial economy,
namely the elimination of the need for a trial. H & M, Inc., 565
F. Supp. at 3. But see B. Manischewitz Co., 1990 WL 86441, at *7
("[T]he primary consideration . . . is not that [the] defendant
will be benefited by the plea, or that the case is a difficult
and protracted one for the defendant, but the test [to be
applied] is whether acceptance of the plea will be in the
interest of sound administration of justice." (quoting United
States v. Lov-It Creamery, Inc., 704 F. Supp. 1532, 1541 (E.D.
Wis. 1989)). In evaluating a nolo plea, "[n]o one factor is
determinative," and the courts "consider these factors as a
whole." B. Manischewitz Co., 1990 WL 86441, at *3.

While these factors provide helpful guidance to this
Court in determining whether to accept Defendant McGill's nolo

10

plea, they are not all inclusive nor are they all relevant in all cases. In fact, the three cases from this Circuit applying these factors all involved defendants charged with violating federal antitrust laws. Therefore, certain factors are irrelevant where the defendant is charged with another type of crime, such as healthcare fraud in the instant matter.[5] Other factors that appear more relevant to the facts of the instant matter include whether "acceptance of the plea would breed contempt for law enforcement, would be discriminatory, and would be incongruous," Lov-It Creamery, 704 F. Supp. at 1541 (quoting 2 Orfield's Criminal Procedure Under the Federal Rules § 11:61 (2d ed. 1985)), and whether acceptance of the plea would result in disparate treatment among similarly situated defendants in the same case.

    B. Alford Pleas

        1.   Alford Pleas Generally

    An Alford plea generally refers to a guilty plea entered by a defendant who wishes to expressly maintain his innocence. North Carolina v. Alford, 400 U.S. 25 (1970). In Alford, Henry Alford was charged with the capital crime of

---

[5]        It appears that no other federal district court has identified specific factors that a court is to consider when deciding whether to accept or reject a nolo contendere plea in a healthcare fraud case.

first-degree murder and was "[f]aced with strong evidence of guilt and no substantial evidentiary support for the claim of innocence." Id. at 27. Evidence against him included the testimony of two witnesses that the defendant left his house with a gun saying that he intended to kill the victim and later returned saying that he had completed the act. Id. at 28. Rather than go through trial, Alford pleaded guilty to second-degree murder, thereby avoiding the capital sentence, while maintaining his innocence. Id. at 27-29. The Supreme Court held that a defendant may knowingly and voluntarily plead guilty even while insisting he is innocent if the judge finds "strong evidence of [the defendant's] actual guilt." Id. at 37. The Court equated Alford's plea with a plea of nolo contendere, stating that it could not "perceive any material difference between a plea that refuses to admit commission of the criminal act and a plea containing a protestation of innocence when, as in [Alford's] case, a defendant intelligently concludes that his interests require entry of a guilty plea and the record before the judge contains strong evidence of actual guilt." Id.

"[T]here must always exist some factual basis for a conclusion of guilt before a court can accept an Alford plea." United States v. Mackins, 218 F.3d 263, 268 (3d Cir. 2000). "Indeed, a factual basis for such a conclusion is an 'essential

part' of an <u>Alford</u> plea." <u>Id.</u> (quoting <u>Willett v. Georgia</u>, 608 F.2d 538, 540 (5th Cir. 1979)).

While a district court is constitutionally permitted to accept an <u>Alford</u> plea, a court is not required to do so. <u>Alford</u>, 400 U.S. at 38 n.11. The <u>Alford</u> Court made clear that "[its] holding does not mean that a trial judge must accept every constitutionally valid guilty plea merely because a defendant wishes so to plead. A criminal defendant does not have an absolute right under the Constitution to have his guilty plea accepted by the court." <u>Id.</u> The Supreme Court went on to state that its decision in <u>Alford</u> did not intend to "delineate the scope of th[e] discretion" granted to the district court by Federal Rule of Criminal Procedure 11, which allows a judge to refuse to accept a guilty plea. <u>Id.</u>

Federal Rule of Criminal Procedure 11 "does not speak directly to the issue of whether a judge may accept a plea of guilty where there is a factual basis for the plea but the defendant asserts his innocence." Fed. R. Crim. P. 11, Advisory Comm. Note to 1974 Amend. The Advisory Committee recommends that "[t]he procedure in such case would seem to be to deal with this as a plea of nolo contendere, the acceptance of which would depend upon the judge's decision as to whether acceptance of the plea is consistent with 'the interest of the public in the effective administration of justice,'" as required by Rule

11(a)(3). Id. As it did with nolo pleas, the Advisory Committee recognized that "[t]he defendant who asserts his innocence while pleading guilty . . . is often difficult to deal with in a correctional setting, and it may therefore be preferable to resolve the issue of guilt or innocence at the trial stage rather than leaving that issue unresolved, thus complicating subsequent correctional decisions." Id.

The Third Circuit has never prescribed a standard that courts should use in deciding whether to accept or reject an Alford plea. However, the Tenth Circuit has held that "[w]hen a defendant offers an Alford plea[,] the proper procedure is to treat the plea as a plea of nolo contendere." Buonocore, 416 F.3d at 1129-30. Given the Alford Court's pronouncement that Alford pleas are substantially similar to nolo contendere pleas and the Advisory Committee's suggestion that both types of pleas should be treated in the same manner, the Tenth Circuit's approach is sound. Accordingly, the Court has broad discretion in determining whether to accept an Alford plea and will undertake the same type of factual analysis discussed supra in subsection II.A.3 when analyzing an Alford plea.

2.   Effect of Alford Pleas

For purposes of sentencing, the Third Circuit has held

that an Alford plea is undoubtedly an adjudication of guilt:

> [A]n Alford plea is simply a guilty plea, with
> evidence in the record of guilt, typically accompanied
> by the defendant's protestation of innocence and his
> or her unequivocal desire to enter the plea. . . .
> That the defendant asserts his or her innocence,
> however, does not change the fact that he or she
> ultimately enters a guilty plea. Thus, as the
> government succinctly states, "[t]here is no such
> thing [as an Alford disposition], at least not
> separate and distinct from a plea of guilty."

Mackins, 218 F.3d at 268 (holding that a prior sentence imposed

as a result of an Alford plea qualified as a "prior sentence"

for purposes of computing a defendant's criminal history

category).

As with nolo contendere pleas, while a reduction for

acceptance of responsibility under an Alford plea is not

automatically barred by the nature of the plea, under certain

circumstances, such a plea may be inconsistent with the

acceptance of responsibility and is a relevant factor to

consider at sentencing. Gordon, 979 F. Supp. at 342; see also

United States v. Alexander, No. 95-5918, 1996 WL 614789, at *1

(4th Cir. Oct. 25, 1996) (affirming district court's denial of a

reduction for acceptance of responsibility after an Alford plea,

because such a plea "is a relevant factor to consider"); United

States v. Harlan, 35 F.3d 176, 181 (5th Cir. 1994) (affirming

district court's refusal to grant a reduction in sentence for acceptance of responsibility for an Alford plea). As with the nolo contendere plea, the Court has no general policy as to whether to accept or reject Alford pleas, and it exercises discretion depending on the circumstances.

## III.   DEFENDANT'S MOTION TO ENTER A NOLO CONTENDERE PLEA OR ALFORD PLEA

In Defendant's "Memorandum Concerning Alternative Pleas," ECF No. 326, Defendant McGill does not make clear whether she intends to negotiate a nolo contendere or Alford plea with the Government. Defendant seems to argue that she is entitled to enter either type of plea, because "all that is necessary for the plea's acceptance" is "a voluntary and intelligent decision to plead guilty or nolo contendere supported by an adequate factual basis for the plea," and both can be demonstrated as to Defendant.[6] Def.'s Mem. 3. She fails to recognize, however, that a court has broad discretion as to whether to accept or reject a nolo or Alford plea. Accordingly, Defendant fails to set forth particular circumstances that

---

[6]         In making this assertion, Defendant relies on two cases: United States v. Davis, 516 F.2d 574 (7th Cir. 1975), and United States v. Jerry, 487 F.2d 600 (3d Cir. 1972). The Court has reviewed both cases, and neither supports Defendant's proposition that she is entitled, as of right, to have her proffered nolo or Alford plea accepted by the Court.

suggest that allowing such a plea in this case would serve "the public interest in the effective administration of justice." Fed. R. Crim. P. 11. While Defendant explains that she has previously suffered a stroke and that the stresses of trial could have an adverse impact on her health, Def.'s Mem. 2, she does not explain why entering a plea of guilty--as many of her supervisors and coworkers charged in the HCH fraud scheme have done--is not an option for her, provided, of course, that she does so knowingly and voluntarily.

In the Government's response to Defendant's memorandum regarding alternative pleas, ECF No. 327, the Government explains that Department of Justice policy requires Assistant United States Attorneys and Criminal Division Trial Attorneys to oppose acceptance of a plea of nolo contendere or an Alford plea except in "extraordinary cases." As with the Defendant, the Government does not explain what those extraordinary circumstances might entail or otherwise set forth factors or considerations that should guide the Court's discretion in determining whether to accept or reject a nolo or Alford plea in this case. However, the Government states that extraordinary circumstances warranting entry of a nolo or Alford plea are not present in the instant case.

As discussed above, in determining whether to accept Defendant McGill's possible nolo contendere or Alford plea in

the instant healthcare fraud case, this Court will consider the following factors in guiding its discretion as to whether such a plea is in the public interest: (1) the interests of private litigants in contemporaneous or future civil or criminal litigation, if any; (2) the position of the Government; (3) the nature of the violations; (4) the duration of the violations; (5) prior violations by the defendant; (6) the impact of the conduct on the public, or federal taxpayers; (7) the deterrent effect of the plea; (8) whether acceptance of the plea would be discriminatory or incongruous; and (9) the defendant's unique circumstances. The Court will consider those each of these factors in turn.

1.    The Interests of Private Litigants in
            Contemporaneous or Future Litigation

The Court recognizes that in certain kinds of case, such as criminal antitrust cases, the defendant's interest in protection in contemporaneous or future civil litigation are important and weigh in favor of the acceptance of a nolo or an Alford plea. In those cases, entry of a guilty plea would allow civil litigants to pursue the defendant and use the guilty plea as a basis for civil liability. The Court also recognizes that under Federal Rule of Evidence 410, a nolo contendere plea is not admissible against a defendant in any later civil or

18

criminal case in the federal courts. Fed. R. Evid. 410(a)(2). However, there is no reason to believe that Defendant McGill will be subject to future civil or criminal litigation as a result of her role in the HCH scheme. Therefore, Defendant cannot assert any legal or financial interest which will be protected by making a nolo or Alford plea in this case.

### 2.    The Position of the Government

The Government opposes Defendant McGill's proffered nolo or Alford plea pursuant to Department of Justice policy. Specifically, the Government contends that such pleas are only warranted in "extraordinary circumstances," and those circumstances do not exist in this case. "[C]ommon sense dictates that the government's position should be carefully considered," because "the government represents the public and . . . the public interest is the paramount factor in the analysis" as to whether to accept a nolo or Alford plea. B. Manischewitz Co., 1990 WL 86441, at *4. The Government's position here shows that it is willing and able to go forward with the prosecution and that it believes the public's interest would be best advanced by rejection of the plea. While not dispositive, the Government's view should be given weight.

3.    The Nature of the Violations

Defendant McGill is charged with conspiracy and thirteen substantive counts of healthcare fraud. The Court finds that healthcare fraud is a serious problem in the United States today, and the issue has been the subject of significant national attention--particularly at this time of healthcare reform and great sensitivity to rising healthcare costs.

Fraud is a well-known contributor to increased costs for healthcare services. Ironworkers Local Union 68 v. AstraZeneca Pharm., LP, 634 F.3d 1352, 1368 (11th Cir. 2011) (citing Barry R. Furrow et al., Health Law: Cases, Materials, and Problems 570 (6th ed. 2008)). Some estimate that the financial losses due to healthcare fraud are in the tens of billions of dollars each year. See Nat'l Health Care Anti-Fraud Assoc., The Challenge of Health Care Fraud, http://www.nhcaa.org/resources/health-care-anti-fraud-resources/the-challenge-of-health-care-fraud.aspx. Medicare and Medicaid fraud increases the cost to the government of providing insurance benefits to the elderly and the poor, and because those programs are funded by taxpayer dollars, taxpayers are ultimately made to pay for the costs added to these programs. Id.

Perhaps worse than stealing taxpayer dollars, healthcare fraud compromises physician-patient relationships and

20

puts the health of vulnerable populations--the poor, the sick, and the elderly--at risk. To the extent that a nolo or Alford plea tends to depreciate the seriousness of the offenses allegedly committed by Defendant, this factor counsels against its acceptance.

4.    The Duration of the Violations

The Court also must take into account the duration of the activity and the reason why it ceased. The indictment charges that the HCH scheme to defraud Medicare began around January 2005 and ended in December 2008--a period of nearly four years. The significant duration of the alleged illegal activity, together with the fact that the activity did not cease until detected by the authorities, factors against acceptance of the nolo or Alford plea.

5.    Prior Violations by the Defendant

The Court knows of no prior violations by Defendant McGill, so this factor weighs in her favor.

6.    The Impact of the Conduct on the Public, or
      Federal Taxpayers

According to the indictment, Defendant McGill authorized HCH nursing staff and supervisors to fabricate and falsify documents in support of hospice care for patients who were not eligible for hospice care or for a higher, more costly

level of care than was actually provided to the patients. Between January 2005 and December 2008, approximately $9,328,000 in fraudulent claims for inappropriate patients were submitted to Medicare. Moreover, the alleged criminal activity undermines the public confidence in the administration of Medicare and Medicaid system.

### 7.    The Deterrent Effect of the Plea

Under this factor, the Court will consider both the deterrent effect on Defendant herself and the deterrent effect on the healthcare community at large. Defendant McGill's nursing license has expired in Pennsylvania, and due to her age and health problems, there is little reason to believe that she would practice nursing and have the opportunity to commit healthcare fraud again. However, the large public concern over healthcare fraud, and the prevalence of fraudulent practices in the industry, supports rejection of the nolo or Alford plea. The public's view of a nolo plea (and for that matter, the Alford plea) is often that it is a mere "slap on the wrist," and the "public should not be given the impression that the judiciary has no interest in adjudicating [a] defendant's guilt or innocence" in such serious matters. B. Manischewitz Co., 1990 WL 86441, at *6. The Court therefore finds that the deterrent effect weighs in favor of rejection of the plea.

8.    <u>Whether Acceptance of the Plea Would Be
Discriminatory or Incongruous</u>

A number of Defendant McGill's supervisors and
coworkers, including subordinate nurses who worked under her
direction, have already pleaded guilty or have been found guilty
by juries with respect to their involvement in the same
fraudulent scheme. The evidence against Defendant McGill appears
to be just as strong. It would result in disparate treatment of
similarly situated defendants--some less culpable than
Defendant--to allow one but not the others to enter a nolo or
<u>Alford</u> plea.

9.    <u>The Defendant's Unique Circumstances</u>

Defendant contends that due to her health conditions,
in her view, she is not able to withstand the stresses of trial
and that, under the circumstances, she should be allowed to
enter a nolo or <u>Alford</u> plea. The Court, upon consideration of
three expert medical opinions and after a hearing, found that
Defendant was competent to stand trial or alternatively to enter
an informed and voluntary plea of guilty.[7] Additionally,
Defendant has failed to articulate why entering a plea of nolo

---

[7]    Should Defendant plead guilty or be found guilty at
trial, her health conditions will be considered by the Court at
sentencing.

contendere or an <u>Alford</u> plea will alleviate her health concerns, while entering a plea of guilty would not.

## IV.  CONCLUSION

The Court, after weighing all of the relevant factors, cannot conclude that acceptance of a plea of nolo contendere or an <u>Alford</u> plea by Defendant McGill is in the interest of the public in the effective administration of justice. Accordingly, the Court will reject Defendant's proffered nolo contendere or <u>Alford</u> plea.