IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 11-189 |
| v. | : | |
| | : | |
| LIOUDMILA NOVIKOV | : | |
| | : | |
| _____ | : | |
| | : | |
| UNITED STATES OF AMERICA, | : | CRIMINAL ACTION |
| | : | NO. 12-112-01-02 |
| v. | : | |
| | : | |
| PATRICIA MCGILL & | : | |
| NATALYA SHVETS. | : | |

M E M O R A N D U M

EDUARDO C. ROBRENO, J.                            August 30, 2022

## I.    INTRODUCTION

Presently before the Court are motions from Defendants Lioudmila Novikov, Patricia McGill, and Natalya Shvets (collectively the "Moving Defendants") to declare their restitution obligations satisfied. For the reasons set forth below, the motions will be denied.[1]

## II.   BACKGROUND

Novikov, Shvets, and McGill, along with fourteen other defendants in related cases,[2] were ordered to pay restitution for

---

[1]    Shvets and McGill have also moved for an accounting of the restitution payments in this matter. Because the government has provided a comprehensive report of payments and the defendants have been given an opportunity to state their objections to the report, the motions for an accounting will be denied as moot.

[2]    The fourteen other defendants ordered to pay restitution for their participation in the scheme are Matthew Kolodesh (No. 11-cr-464), Alex Pugman (No. 09-cr-651), Eugenia Roytenberg (No. 11-cr-84), Diana Koltman (No. 11-cr-

their respective roles in a healthcare fraud scheme involving their employer, Home Care Hospice ("HCH"). The defendants involved in the scheme shall be hereinafter referred to collectively as the "HCH Defendants."

The scheme consisted of three categories of offense conduct: (1) submitting fraudulent claims for reimbursement to Medicare for hospice patients; (2) falsifying records so that they showed that patients were eligible for and continued to receive hospice care when they were no longer eligible for such care; and (3) obstructing a federal audit of HCH's records. In connection with the criminal case against the owner of HCH, Matthew Kolodesh, this Court found that the total loss to the victim Medicare as a result of this scheme was $16.2 million.[3]

Novikov was charged by information with one count of obstruction of a federal audit in violation of 28 U.S.C. § 1516. She pled guilty pursuant to a plea agreement and was sentenced to three years' probation. In her criminal judgment, Novikov was ordered to pay $405,184 in restitution. Novikov's judgment holds

---

182), Edward Hearn (No. 11-cr-297), Inga Slipchenko (No. 11-cr-298), Cecilia Wiley (No. 11-cr-322), Anna Yakhnis (No. 11-cr-362), Zoya Shusterman (No. 11-cr-399), Angelica Bagdasarova (No. 11-cr-638), Svetlana Ganetsky (No. 09-cr-652), Giorgi Oqroshidze (No. 12-cr-112-03), Yevgeniya Goltman (No. 12-cr-112-04), and Alexsandr Koptyakov (No. 12-cr-112-05). A table containing each defendant's initial restitution obligation and balance owed is attached to this memorandum.

[3]    After Kolodesh appealed his conviction and sentence, the Third Circuit affirmed this Court's conclusion that the government had proven a total loss of $16.2 million dollars. See United States v. Kolodesh, 787 F.3d 224, 239 (3d Cir. 2015).

her jointly and severally responsible with five other defendants: Alex Pugman, Svetlana Ganetsky, Matthew Kolodesh, Diana Koltman, and Eugenia Roytenberg.

Shvets was charged by indictment with conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 and seven counts of healthcare fraud in violation of 18 U.S.C. § 1347. She was convicted by a jury on all counts. Shvets was sentenced to fifteen months of incarceration and three years of supervised release and was ordered to pay $253,196 in restitution. Shvets' judgment holds her jointly and severally responsible with eight other defendants: Matthew Kolodesh, Alex Pugman, Cecilia Wiley, Giorgi Oqroshidze, Edward Hearn, Alexsandr Koptyakov, Yevgeniya Goltman, and Diana Koltman.

McGill was charged by indictment with conspiracy to commit healthcare fraud in violation of 18 U.S.C. § 1349 and thirteen counts of healthcare fraud in violation of 18 U.S.C. § 1347. After a jury trial, she was adjudged guilty on four counts of healthcare fraud and acquitted of the remaining counts of the indictment. McGill was sentenced to one year and one day of imprisonment and three years of supervised release and was ordered to pay $231,113.38 in restitution. McGill's judgment holds her jointly and severally responsible with seven other defendants: Matthew Kolodesh, Alex Pugman, Svetlana Ganetsky,

Natalya Shvets, Giorgi Oqroshidze, Yevgeniya Goltman, and Alexsandr Koptyakov.

Among the seventeen HCH Defendants ordered to pay restitution, only Kolodesh and Pugman were ordered to pay the full amount of the total $16.2 million harm. However, the respective judgments of the remaining fifteen defendants hold them jointly and severally liable with, inter alia, Pugman and Kolodesh.

According to the government's most recent report of restitution payments, the seventeen defendants implicated in the scheme have collectively paid $13,293,580.43 of the $16.2 million total owed. In calculating the amount of restitution remaining to be paid by each individual defendant, the report accounts for two types of payments: (1) "direct" payments, which are payments made personally by each defendant; and (2) joint and several "credits," which are applied to each defendant's balance as a result of the payments made by their joint and several co-defendants. The government's method of accounting for these restitution credits is discussed in more detail in footnote 5, below.

According to the report, Novikov, Shvets, and McGill currently owe $50,622.51, $18,929.69, and $22,806.93, respectively. Novikov has made $24,864.07 in direct payments and has received $329,697.42 in joint and several restitution

4

credits. Shvets has made $7,591.88 in direct payments and has received $226,674.43 in joint and several credits. McGill has made $3,175.00 in direct payments and has received $204,731.45 in joint and several credits.

Novikov, Shvets, and McGill now move to mark their respective restitution obligations satisfied. After two hearings on the record and extensive briefing, the motions are ripe for the Court's review.

## III. DISCUSSION

### A.   Factual Challenges to the Government's Report

The Moving Defendants first raise a number of factual challenges to the government's report of restitution payments. McGill and Shvets object to the government's purported failure to fully investigate whether Medicare has received any form of compensation from HCH or other sources, which they aver could be credited as "offsets" to the total restitution owed to Medicare. However, as the government points out, "where offsets are claimed, such as for compensation that the victim gets from other sources . . . it is the defendant's burden to prove those offsets." United States v. Bryant, 655 F.3d 232, 254 (3d Cir. 2011). And in any event, the Moving Defendants have not pointed to any authority that supports their position that these potential credits may even be applied at this stage, given that the Court has already determined the appropriate amount of

restitution owed to Medicare and the time to challenge that particular determination has long passed. The applicable authority suggests that these offsets to the restitution obligation are relevant only to the Court's initial determination of how much to award the victim in restitution. See generally id. (considering whether a district court should have applied an offset to the restitution amount in the context of a direct appeal of a restitution order); United States v. Umana, 713 F. App'x 106, 110 (3d Cir. 2017) (same). At this stage of the case, the amount the Moving Defendants were ordered to pay in restitution is not subject to dispute; the issue remaining is whether the amount of restitution ordered has been paid.[4]

The remaining factual challenges to the government's restitution consist of assertions that the government has not properly acknowledged all recoveries that could be applied toward restitution. After reviewing the Moving Defendants' objections and the government's most recent report, the Court is

---

[4]    Shvets has also filed a motion to enforce a subpoena she served on Cahaba Government Benefit Administrators, which she describes as the third-party intermediary between HCH and Medicare. The subpoena seeks comprehensive financial information about potential credits that Medicare may have received from HCH. However, as stated above, this information may be relevant to the value of the total harm to Medicare, which is not subject to dispute at this stage, but is not relevant to whether the Moving Defendants have satisfied their respective restitution obligations. Shvets' motion to enforce the subpoena will be accordingly denied.

satisfied that the government has adequately reported all it has recovered toward restitution in this matter.

**B.    The "Hybrid" Method of Administering Restitution**

The purpose of restitution under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A et seq., is to "compensate the victim for its losses and, to the extent possible, to make the victim whole." United States v. Diaz, 245 F.3d 294, 312 (3d Cir. 2001) (citing United States v. Kress, 944 F.2d 155, 159-60 (3d Cir. 1991)). When a district court finds that more than one defendant has contributed to a victim's loss, the court has discretion to either apportion liability among the defendants to reflect the level of harm each defendant caused or to hold all defendants jointly and severally liable for the entire harm. See 18 U.S.C. § 3664(h); United States v. Sheets, 814 F.3d 256, 260 (5th Cir. 2016).

Where "multiple defendants are held liable for injuries caused by a common scheme," some courts have employed a "hybrid approach," which both apportions harm to each defendant based on their involvement and simultaneously holds the defendants jointly and severally liable for the entire harm. Sheets, 814 F.3d at 261; see also, e.g., United States v. Yalincak, 30 F.4th 115, 119-20 (2d Cir. 2022); Diaz, 254 F.3d at 312. The Second Circuit has explained the utility of the hybrid approach as follows:

The hybrid restitution order combines the discretion and apportionment authority permitted by § 3664(h) with the common law concept of joint and several liability. It thus accounts for multiple defendants' varying degrees of contribution to a victim's total loss, while also prioritizing the victim's likelihood of recovery. In such orders, the most significant offender may be held liable for the full amount of the loss, while lesser participants are required to contribute lesser amounts.

Yalincak, 30 F.4th at 124.

Under the hybrid approach, a defendant generally does not fully satisfy her restitution obligation until she either pays the amount apportioned to her individually or until the victim has been made whole for the entire harm. See id. at 118. Each joint and several defendant's individual restitution obligation is extinguished when the victim is made whole, because "the government may not collect more from all defendants together than will make the victim whole." Sheets, 814 F.3d at 261 (citations omitted).

It is the government's position that the Court's imposition of restitution in this matter requires the application of a hybrid restitution model.[5] It relies on the fact that each of the

---

[5]    The Court notes that while the government's approach in these cases is a "hybrid" model in that it seeks to hold the defendants individually responsible for a portion of the total harm while also holding them jointly liable for the whole, it appears to differ in one respect from the approach set forth in Sheets and Yalincak. Here, when a defendant makes a restitution payment, the government credits that defendant (the payor) with the entire amount of that payment and also applies a proportional "credit" to each defendant held jointly and severally liable with the payor. The amount of the credit is proportional to the balance of the joint and several defendant's individual obligation as compared to the total outstanding amount of the collective harm. For example, McGill was personally ordered to pay $230,713.38 in restitution, which is approximately 1.42% of the $16.2 million total harm to Medicare. If, at the outset of the restitution collection,

HCH Defendants was assigned an allocated amount of restitution to pay, while at the same time all being held jointly and severally liable with Kolodesh and Pugman (who are both personally liable for the entire $16.2 million harm), among others. The Moving Defendants object to the government's use of a hybrid approach and argue, as detailed below, that their own payments combined with those of their joint and several defendants have rendered their restitution obligations satisfied. For the following reasons, Court disagrees.

McGill and Shvets first argue that the Court could not have imposed a hybrid restitution model when it entered the judgments

Kolodesh—who is joint and several with McGill and personally liable for the entire $16.2 million—made a $1,000 payment, McGill would receive a proportional joint and several credit for $14.24. Because each HCH Defendant only receives the proportional credit from payments by other defendants with whom they are jointly and severally liable, the proportional percentages change slightly as all HCH Defendants pay restitution toward the whole.

As a result of this method of applying joint and several credits, a defendant could, in theory, satisfy her personal restitution obligation without (a) directly paying the entire amount attributed to her or (b) the victim being fully compensated for the entire harm. Pursuant to this method, Shvets could, for example, extinguish her $253,196.00 personal obligation by directly paying her remaining balance of $18,929.69 even though she has only directly paid $7,591.88 thus far, and that additional $18,929.69 payment would not fully satisfy the remaining total the HCH Defendants collectively owe Medicare. This differs from the Yalincak court's observation that a "hybrid restitution obligation[] [is] ordinarily not satisfied until either a defendant has paid as much as she has been ordered to pay or the victim has been made whole." Yalincak, 30 F.4th at 118.

While, as set forth more fully above, the Moving Defendants object to the government's method of calculating joint and several credits, they do not object to the fact that they have been apportioned credits from their joint and several co-defendants. Because the government's method of apportioning joint and several credits only works to the Moving Defendants' benefit, and because the Court concludes that they have not satisfied their restitution obligations in any event, the distinction between the government's method and that described in Yalincak is not material to the disposition of the present motions.

in this case because at the time the Moving Defendants were sentenced, the Fifth Circuit had not yet issued its opinion in Sheets. However, as the Fifth and Second Circuits both acknowledge, Sheets did not create the hybrid approach; it was merely the first court to use the term. See Sheets, 814 F.3d at 261-62 (citing cases from 2001 and 2010 in which the approach was applied); Yalincak, 30 F.4th at 124 ("Although the Fifth Circuit may have been the first to use the term, that court did not cut the hybrid approach out of whole cloth."). Thus, the fact that the Moving Defendants' judgments were entered prior to the Sheets decision does not preclude the application of the hybrid approach to their restitution obligations.

McGill and Shvets further argue that their restitution should be administered pursuant to a dollar-for-dollar or "rungs on a ladder" approach as applied in United States v. Broadbent, 225 F. Supp. 3d 239 (S.D.N.Y. 2016). The Broadbent court considered a judgment which held a defendant personally liable for a portion of a total harm while at the same time being held jointly and severally liable with the defendants responsible for the entire harm. The court concluded that based on the nature of that case and the language in the defendant's judgment, the defendant's individual obligation was extinguished when the sum of payments from him and his co-defendants exceeded the amount of his own personal responsibility, regardless of the amount the

defendant had paid directly. Were this approach applied here, the Moving Defendants' obligations would be extinguished because the total restitution recovered by their joint and several defendants well exceeds any of their personal obligations.

However, Broadbent is clearly distinguishable from this case. The key impetus behind the Broadbent court's decision was a provision in the defendant's judgment stating that his "'obligation to make restitution shall cease once the aggregate of the restitution paid' by him and the three other defendants 'reaches $120,000.'"[6] Id. at 241. This provision "alters the hybrid approach." Yalincak, 30 F.4th at 130 (applying the hybrid approach to a restitution order after noting that the defendant's restitution order had no provision like the one at issue in Broadbent). The Moving Defendants had no such provision in their respective restitution orders. Thus, the Court concludes that Broadbent's reasoning and approach are inapplicable to this case.

In a similar vein, Novikov argues that her obligation should be deemed satisfied because she and the defendants with whom she was held jointly and severally liable have collectively paid more than the $405,184.00 obligation listed in her

---

[6]     The Broadbent court also found relevant that the joint and several defendants in that case were all sentenced by different judges, making it less likely that the court that sentenced the defendant was familiar with the details of the entire scheme. Id. at 244. This is also not relevant to this case, as all seventeen HCH Defendants were sentenced by this Court.

judgment. She argues that because she pled guilty to a single offense—obstructing a federal audit—which was found to have resulted in a harm of $405,184.00, her judgment should not be interpreted to hold her jointly and severally responsible for the entire $16.2 million loss. The Court disagrees. Though the Moving Defendants either pled guilty to or were convicted of lesser offenses than some of the other defendants implicated in the scheme, the defendants all contributed to the comprehensive scheme to defraud Medicare. This is evidenced by their judgments, which hold them jointly and severally liable with not only the other defendants who committed the same type of conduct, but with Kolodesh and Pugman, who were found to have orchestrated the entire scheme.[7] The time for Novikov to establish that her conduct was severable from the entire scheme was at sentencing. If she had done so, the judgment would so reflect, and she accordingly would not have been held jointly and severally liable with the other defendants.

Moreover, the fact that the Moving Defendants were less culpable than others involved in the scheme does not preclude the hybrid restitution model's application here. On the contrary, the purpose of the hybrid approach is to prioritize making the victim whole while at the same time accounting for

---

[7]     Not only does Novikov's judgment hold her jointly and severally liable with Kolodesh and Pugman, but she is also named as a joint and several defendant in the judgments of both Kolodesh and Pugman.

the varying levels of culpability of the participants in a criminal scheme. See Yalincak, 30 F.4th at 124 (the hybrid approach "accounts for multiple defendants' varying degrees of contribution to a victim's total loss, while also prioritizing the victim's likelihood of recovery").

Finally, the Moving Defendants argue that they cannot be held jointly and severally responsible for the $16.2 million total harm to Medicare because that total number was not directly litigated in their respective cases and does not appear in any of their judgments. They assert that holding them jointly responsible for the entire harm would amount to a due process violation, given that they had no opportunity nor standing to object to the calculation of the $16.2 million total. This argument rests on a misunderstanding of the purpose and function of the hybrid approach. Under the hybrid approach, each defendant's restitution obligation is extinguished as soon as they personally pay the amount allocated to them individually, even if the victim has not yet been fully compensated. See Yalincak, 30 F.4th at 126. Therefore, a defendant held personally liable for a sum less than the entirety of the harm will never be held personally responsible for more than the amount personally allocated to her. In fact, holding such a defendant jointly and severally liable for the entire harm only helps her, given that the amount of the entire harm is only

13

relevant to the extent it terminates her obligation if it is fully paid, regardless of whether she has paid the amount individually allocated to her. Under these circumstances, applying the hybrid approach to the Moving Defendants' restitution payments does not violate their right to due process.

The Court concludes that the language of the Moving Defendants' judgments supports the application of the hybrid approach. Each of the Moving Defendants was apportioned a sum of restitution for which they were to be held personally responsible. At the same time, their judgments hold them jointly and severally liable with, inter alia, Kolodesh and Pugman, who are both personally liable for the entire harm. Under the direction of the applicable case law, the Moving Defendants have accordingly not satisfied their individual restitution obligations until either (a) they have personally paid the amount apportioned to them individually, or (b) the victim has been made whole for the entire harm caused by the comprehensive scheme. See id. at 118. The Moving Defendants have not demonstrated that either of these conditions are met. Therefore, they have not yet satisfied their restitution obligations.

**IV.  CONCLUSION**

For the foregoing reasons, the Moving Defendants' motions to declare restitution satisfied will be denied.

14

An appropriate order follows.

**United States v. Pugman, Kolodesh, et al.**
**Summary of Defendants' Restitution Payments**
**For Payments Received Through:**                    7/7/2022
**Includes Civil Settlements**   **$ 12,286,480.55**   (A)

| Ref No. | Defendant | Restitution Ordered | Total | Direct by Defendant | J&S Credits | Restitution Balance Owed |
|---|---|---|---|---|---|---|
| | | A | B = (C + D) | C | D | E = (A - B) |
| 1 | Alex Pugman | $ 16,200,000.00 | $ 13,293,580.43 | $ 4,000,550.35 | $ 9,293,030.08 | $ 2,906,419.57 |
| 2 | Patricia Mcgill | $ 230,713.38 | $ 207,906.45 | $ 3,175.00 | $ 204,731.45 | $ 22,806.93 |
| 3 | Eugenia Roytenberg | $ 405,184.00 | $ 354,561.49 | $ 16,150.00 | $ 338,411.49 | $ 50,622.51 |
| 4 | Diana Koltman | $ 405,184.00 | $ 354,913.22 | $ 21,850.00 | $ 333,063.22 | $ 50,270.78 |
| 5 | Lioudmila Novikov | $ 405,184.00 | $ 354,561.49 | $ 24,864.07 | $ 329,697.42 | $ 50,622.51 |
| 6 | Edward Hearn | $ 42,211.00 | $ 42,211.00 | $ 25,897.91 | $ 16,313.09 | $ - |
| 7 | Inga Slipchenko | $ 296,900.00 | $ 270,770.34 | $ 3,425.00 | $ 267,345.34 | $ 26,129.66 |
| 8 | Cecelia Wiley | $ 258,000.00 | $ 238,269.74 | $ 11,850.00 | $ 226,419.74 | $ 19,730.26 |
| 9 | Anna Yakhnis | $ 121,567.00 | $ 118,959.99 | $ 22,850.00 | $ 96,109.99 | $ 2,607.01 |
| 10 | Zoya Shusterman | $ 118,880.00 | $ 116,467.70 | $ 800.00 | $ 115,667.70 | $ 2,412.30 |
| 11 | Matthew Kolodesh | $ 16,200,000.00 | $ 13,293,580.43 | $ 9,115,633.87 | $ 4,177,946.56 | $ 2,906,419.57 |
| 12 | Angelica Bagdasarova | $ 156,213.00 | $ 145,418.54 | $ 18,217.35 | $ 127,201.19 | $ 10,794.46 |
| 13 | Svetlana Ganetsky | $ - | $ - | $ - | $ - | $ - |
| 14 | Natalya Shvets | $ 253,196.00 | $ 234,266.31 | $ 7,591.88 | $ 226,674.43 | $ 18,929.69 |
| 15 | Giorgi Ogroshidze | $ 189,907.00 | $ 180,166.48 | $ 12,500.00 | $ 167,666.48 | $ 9,740.52 |
| 16 | Yevgeniya Goltman | $ 195,583.00 | $ 185,158.66 | $ 4,550.00 | $ 180,608.66 | $ 10,424.34 |
| 17 | Alexander Koptyakov | $ 215,517.00 | $ 202,118.85 | $ 3,675.00 | $ 198,443.85 | $ 13,398.15 |
| | **Totals** | **$ 16,200,000.00** | **$ 13,293,580.43** | | | **$ 2,906,419.57** |

Notes:

(A)  Kolodesh and Yakobashvili Civil settlement payments        $  8,812,253.36
      Pugman and Ganetsky Civil settlement payments             $  3,474,227.19
                          Total Civil settlement payments        $ 12,286,480.55
      (Both settlement amounts exclude amounts returned to defendants for taxes/future taxes on restrained accounts).

| | Shvets Credits | McGill Credits |
|---|---|---|
| All direct payments | $ 7,591.88 | $ 3,175.00 |
| J&S payment credits | $ 130,203.09 | $ 92,105.98 |
| Kolodesh/Yakobashvili civil | $ 69,192.30 | $ 80,778.56 |
| Pugman/Gánetsky civil | $ 27,279.04 | $ 31,846.91 |
| | $ 234,266.31 | $ 207,906.45 |

(B)  This report includes $237,500.00 received by the Department of Justice from Alex Pugman which has not been transferred to the Clerk's Office as of the date of this report.